FILED
2021 Jun-04  AM 10:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **Civil Action No.** |
| v. | ) | **2:17-CV-01651-MHH** |
| | ) | |
| **BIRMINGHAM BEVERAGE COMPANY, INC. d/b/a AlaBev,** | ) | |
| | ) | |
| Defendant. | ) | |

---

### CONSENT DECREE

---

### I.  RECITALS

On September 24, 2017, the U.S. Equal Employment Opportunity Commission filed this civil action against defendant Birmingham Beverage Company, Inc. d/b/a AlaBev, alleging that Birmingham Beverage discriminated against Ronnie Johnson and a class of aggrieved individuals by failing to promote them to Route Salesman positions because of their race, in violation of Sections 703(a)(1), (a)(2) and (k) of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), (a)(2), and (k). In its Complaint, the Commission alleged that since at least January 1, 2013, Birmingham Beverage has intentionally denied and continues to deny Black employees' hire into Route Salesman positions company-wide because of their race.

1.      For purposes of entry of this agreement, the parties agree, and the Court finds that this Court has jurisdiction of the subject matter of this action and of the parties, that venue is proper, and that all administrative prerequisites have been met.

1

2.      For the purpose of amicably resolving disputed claims, the parties jointly ask the Court to adjudge as follows:

## II.      SCOPE AND DURATION OF DECREE

3.      This Decree resolves all issues and claims arising out of or that could have been brought pursuant to EEOC Charge No.   420-2014-00629 and the Commission's Complaint in Civil Action No. 2:17-CV-0651-MHH. This Decree shall not be considered in any manner to be dispositive of any other matters which are or may be pending before any office of the Commission. Nothing in the Decree, either by inclusion or exclusion, shall be construed to affect, or otherwise limit, the EEOC's authority to process or litigate any other future charge of discrimination filed against Birmingham Beverage.

4.      This Decree applies to all of Birmingham Beverage's facilities and operations.

5.      The provisions of this decree are effective immediately upon the date that the Decree is entered by the Court (the "Effective Date") and shall be binding upon the parties to this lawsuit for three years after the effective date of this Decree.

6.      The parties have agreed to move the Court to enter this Consent Decree within five business days of all parties signing the Consent Decree to prevent delay of the resolution of this litigation.

7.      This Consent Decree, being entered with the consent of the parties for purposes of settlement, shall not constitute an adjudication on the merits of this lawsuit and shall not be construed as an admission by Birmingham Beverage that it violated Title VII.

## III.      INJUNCTIVE RELIEF

8.      Birmingham Beverage and its supervisors, managers, officers, directors, and successors (collectively "Defendant") are enjoined from discriminating against any employee because of their

race, including but not limited to, discrimination in hiring or promotion.

9.  Defendant is enjoined from discriminating against any job applicant on the basis of race.

10.  Defendant is enjoined from engaging in any act, policy or practice that has the purpose or effect of discriminating against any applicant for employment or employee on the basis of race.

11.  Defendant is enjoined from retaliating in any way against any person because such person has opposed any practice made unlawful under Title VII, filed a charge of discrimination under Title VII, testified or participated in any manner in any investigation, proceeding or hearing under Title VII, or asserted any rights or received any benefits under this Decree.

12.  Defendant is enjoined from destroying employment and hiring records required by paragraph 45 or which should otherwise be retained pursuant to its obligations under Title VII.

## IV.  MONETARY RELIEF – CHARGING PARTY

13.  Birmingham Beverage shall pay monetary relief in the gross amount of $200,000 to the Charging Party Ronnie Johnson.

    a.  Birmingham Beverage will pay $30,000 less deductions for applicable federal, state and local income and employment taxes and other lawful deductions, for alleged and disputed lost wages. Birmingham Beverage will provide Johnson with an IRS Form W-2 for this amount.

    b.  Birmingham Beverage will pay $170,000 for alleged and disputed non-wage compensatory damages. Birmingham Beverage will provide Johnson with an IRS Form 1099 Misc. for this amount.

14.  Within 30 calendar days of the Court's entry of this Consent Decree and the EEOC's provision of the condition precedent materials (i) - (iii) on behalf of Mr. Johnson as described in

paragraph 17, payment in full of the amounts in Paragraphs 13(a) and 13(b) shall be made by checks payable to Ronnie Johnson.  Delivery of checks shall be as described in paragraph 21.

15.     Birmingham Beverage shall mail a photocopy of the checks to the attention of the Regional Attorney, Equal Employment Opportunity Commission, Birmingham District Office, 1130 22nd Street South, Suite 2000, Birmingham, Alabama 35202, at the time the checks are drafted to Johnson.

## V.     MONETARY RELIEF – CLASS MEMBERS

16.     Birmingham Beverage shall pay an additional sum of $625,000 to be allocated as determined pursuant to Paragraph 18.

17.     Birmingham Beverage shall make the payments described in paragraph 16 within 30 days after the satisfaction of the following conditions precedent: (i) Birmingham Beverage receives a waiver executed by the Class Member in the form attached as Exhibit B (ii) Birmingham Beverage receives from the Class Member an executed declaration affirming that no federal government lien against the payor(s) would be created from his receipt of these monetary benefits (form provided separately to the EEOC); (iii) Birmingham Beverage receives a W-9 form from the Class Member; (iv) the EEOC provides the Confidential Distribution List described in the following paragraph; (v) the Court enters this Consent Decree, closing the case except such matters remaining in the Court's jurisdiction as described herein. The EEOC shall have 120 days following the entry of the Consent Decree to provide the condition precedent materials to Defendant's counsel. Birmingham Beverage must receive all of the condition precedent materials within the 120 day period prior to issuing payments to any Class Member. The parties anticipate that once the conditions precedent in (iv) and (v) are satisfied, that the EEOC may submit condition precedent materials in (i) – (iii) on an individual basis within the 120 day period. Nothing in this paragraph or in this Decree shall be construed as making the entitlement of any

4

Class Member to receive payment dependent upon the satisfaction of the (i)-(iii) conditions by any or all of the other Class Members.

18.     The EEOC will provide Defendant Birmingham Beverage with a Confidential Distribution List containing the names, addresses, dates of birth, and social security numbers of each affected Class Member, as well as the gross amount allocated, to be disbursed to each Class Member.

19.     Defendant Birmingham Beverage shall issue two checks payable to each Class Member identified on the Confidential Distribution List within 30 days after receipt of said list, the entry of the Consent Decree, and Birmingham Beverage's receipt of the condition precedent materials in paragraph 17, subparagraphs (i) – (iii) as follows:

      a.     A check for 25% of the total allocated to that Class Member, less deductions for applicable federal, state and local income and employment taxes and other lawful deductions, for alleged and disputed lost wages.  Birmingham Beverage will provide the Class Member with an IRS Form W-2 for this amount.

      b.     A check for 75% of the total allocated to that Class Member for alleged and disputed non-wage compensatory damages. Birmingham Beverage will provide the Class Member with an IRS Form 1099 Misc. for this amount. For any amounts paid in settlement of claims for compensatory damages, no federal and state withholding taxes shall be made by Birmingham Beverage. With the exception of the amount allocated to alleged and disputed lost wages, for which Birmingham Beverage may be liable for a portion of employer withholding taxes, the Class Members shall pay taxes, if any, which are required by law to be paid with respect to the settlement amount.

20.     On the same day that the settlement checks are drafted for the Class Members identified on the Confidential Distribution List, Birmingham Beverage shall submit a copy of each check

and related correspondence to Marsha Rucker, EEOC Regional Attorney, at the office address on the signature page of this Decree. The EEOC shall be responsible for notifying Class Members of the availability of their checks.

21.     The settlement checks will be available to Class Members for personal pickup upon showing identification to Defendant Birmingham Beverage's designee during regular business hours at Birmingham Beverage's business office. Defendant Birmingham Beverage shall have no obligation to reissue any check personally delivered as described herein or kept available for pickup until its expiration by normal banking rules.

## VI.     TITLE VII COORDINATOR

22.     Within 60 days of entry of this Decree, and for the duration of the Decree, Birmingham Beverage shall hire or retain as a contractor a qualified Title VII coordinator ("Title VII Coordinator") with experience in Title VII, EEO compliance, human resources and personnel matters.

23.     Birmingham Beverage shall inform all employees of the appointment and function of the Title VII Coordinator orally at the training mandated in Paragraphs 50 -52 and in writing, by posting at the time clocks, in the break rooms, by the driver check-in room, and via company-wide email within 30 calendar days of the hire or retention of the Title VII Coordinator. In addition, each individual who makes an EEO complaint, whether written or oral, to Birmingham Beverage shall again receive, upon making a complaint, a written notice informing him/her of the existence and function of the Title VII Coordinator. Both the initial notice and the notice distributed upon receipt of a complaint shall provide the name, telephone number, electronic mail address, and street address at which the Title VII Coordinator may be reached.

24.    Within ninety (90) days of entry of this Decree, Defendant will provide adequate resources to the Title VII Coordinator to assist the Coordinator in accomplishing all his/her responsibilities.

25.    The following is a list of responsibilities assigned to the Title VII Coordinator:

a.    Create and implement Defendant's Training program provided for in Paragraphs 50 through 52 of this Decree;

b.    Disseminate newly revised policies and procedures as detailed in Paragraphs 26 and 27.

c.    Assist all of Defendant's human resource and supervisory employees with their responsibilities to comply with Title VII in promotion and hiring decisions, including but not limited to aiding such employees to remain in full compliance with this Decree;

d.    Investigate independently and confidentially any and all complaints of race-based discrimination in promotion, hiring and retaliation; and

e.    Ensure that the notice attached to this Decree is timely sent to all employees and applicants.

## VII.    ANTI-DISCRIMINATION POLICY

26.    Within sixty (60) days of the entry of this Decree, Defendant will review its existing policies and procedures and develop and implement new and/or revised written policies and procedures (collectively referred to as "Policy"), as may be necessary to ensure equal employment and promotion opportunities are afforded to Black applicants and employees.

27.    The Policy must be written to be easily understandable to a lay person and include at a minimum:

a.    A strong and clear commitment to preventing unlawful discrimination in the workplace, including discrimination in hiring, promotion, and assignment;

b.      A strong and clear statement that discrimination based on race is prohibited discrimination under Title VII, and that hiring, promotion, and assignment decisions may not be made on the basis of race;

c.      A clear and strong encouragement of persons who believe that they or others have been discriminated against to report such concerns;

d.      A clear and strong statement that retaliation for reporting discrimination is prohibited and will not be tolerated;

e.      The identification in the Policy of a confidential, toll-free, employee hotline number for reporting concerns about discrimination, harassment, or retaliation and where such complaints may be communicated;

f.      A clear explanation of the steps an employee should take to report discrimination or retaliation, which must include the options of either an oral or written complaint;

g.      A clear explanation of the steps a lead person, supervisor, manager, or staff member in Human Resources must take when receiving a report of discrimination or retaliation, which must include escalating the complaint to the attention of a Senior Management Official (to be designated by Defendant), Title VII Coordinator and/or the employee hotline;

h.      A clear statement that EEO compliance will be a component in training for all managerial and supervisory positions;

i.      An assurance that Defendant will investigate allegations of any activity that might be construed as unlawful discrimination and that such investigations will be prompt, fair, and reasonable;

j.      A statement that the investigation will include the following: (a) documentation of the complaint; (b) a finding of whether discrimination occurred; (c) interviews of all

8

potential victims and witnesses identified, including the individual(s) alleged to have participated in or condoned the unlawful conduct;  (d) a review of all documents which might shed light on the allegation, where such exist; (e) contemporaneous notes of the investigation and conclusions;  (f) contemporaneous notes of all corrective and remedial measures where discrimination is found; and (g) the investigator shall review relevant confidential investigation files to determine the history of any  prior discrimination or retaliation complaints.

k.      A policy that Defendant shall not retain documents related to the investigation in any of the complainant's personnel files. These documents, instead, must be retained in a separate secure location. All disciplinary actions taken against employees for violation of Defendant's Policy will be retained in the violator's personnel file;

l.      Investigation materials will be retained and maintained in a confidential investigation file;

m.      An assurance that appropriate corrective action will be taken by Defendant to make victims whole and to eradicate the unlawful conduct within its workforce;

n.      A description of the consequences, up to and including termination, that will be imposed upon violators of Defendant's anti-discrimination policies;

o.      A promise of the maximum feasible confidentiality for persons who report unlawful discrimination, harassment, and/or retaliation, or who participate in an investigation into allegations of discrimination, harassment, and/or retaliation;

p.      An assurance of non-retaliation for persons who report unlawful discrimination and/or retaliation, and for witnesses who provide testimony and/or assistance in the investigation(s) of such unlawful discrimination and/or retaliation; and

9

q.   An assurance that each time Defendant's Policy is updated or revised, Defendant shall disseminate it to all employees with the date of the new Policy.

28.   Within thirty (30) days after completion of the policy review required under Paragraphs 26 and 27 above, Defendant shall provide a copy of the Policy to any recruiters or employment agencies with whom it contracts for the purpose of supplying labor, temporary or permanent, for its facilities, and any other individuals who have any input into Defendant's hiring process.

29.   Within thirty (30) days after completion of the policy review required under Paragraphs 26 and 27 above, Defendant will post the Policy on its website, in area accessible to employees and applicants. Within thirty (30) days after completion of the policy review required under Paragraphs 26 and 27 above, Defendant will distribute a copy of the Policy to all current employees.   Within thirty (30) days after completion of the policy review required under Paragraphs 26 and 27 above, Defendant will provide a copy of the new policy to newly hired employees within ten (10) days of hire. Providing this policy in an employee handbook or onboarding documents shall satisfy the requirement of notifying newly hired employees. Defendant shall make the Policy available in alternative formats as necessary for persons with literacy or language barriers that may prevent them from reading the policies upon the person making Defendant aware of such a limitation.

30.   Within thirty (30) days after completion of the policy review required under Paragraphs 26 and 27 above, Defendant shall post (and keep posted) the Policy in a prominent location at each of Defendant's facilities that is customarily used for displaying communications to employees.

31.   Within thirty (30) days after completion of the policy review required under Paragraphs 26 and 27 above, Defendant shall forward a copy of all EEO policies to the Commission and certify that the Policy has been posted and distributed.

## VIII.   DEVELOPMENT OF HIRING PROCESS AND POLICY

32.   Within sixty (60) days after entry of this Decree, Defendant shall develop, implement, and disseminate by paper copy or electronically to each of its employees, supervisors, and managers a new and/or revised written hiring and promotion policy and process ("Hiring and Promotion Policy") for all non-executive (excluding President, CEO, VP, COO, and CFO position) hiring or promotion decisions.

    a.    The Hiring and Promotion Policy shall be designed to ensure that all employees are provided equal employment or promotion opportunities;

    b.    The Hiring and Promotion Policy shall provide that notice of all non-executive position vacancies and promotion opportunities at Defendant's operations in the State of Alabama will be disseminated to all employees;

    c.    The Hiring and Promotion Policy shall establish a process and procedure for each employee to apply for the posted non-executive position vacancies and promotion opportunities;

    d.    The Hiring and Promotion Policy shall describe the deadlines and application procedures Defendant shall follow to ensure proper and full consideration of employees for the vacancy and/or promotion opportunity;

    e.    The Hiring and Promotion Policy shall require all postings to describe the qualifications and requirements for the vacancy and/or promotion opportunity;

    f.    The Hiring and Promotion Policy shall provide that employees who apply for a vacancy or promotion, but are not selected for the vacancy or promotion, shall be informed, upon request, of the reason s/he was not selected; and

g.     The Hiring and Promotion Policy shall contain a provision on how to make complaints of discrimination in hiring decisions, and shall contain the name, telephone address and address to whom a complaining employee may direct such a complaint.

33.     For the duration of this Consent Decree, notice of the Hiring and Promotion Policy will be provided to each new employee within seven (7) days of hire. Providing this policy in an employee handbook or onboarding documents shall satisfy this requirement.

34.     Defendant will submit a copy of its Hiring and Promotion Policy to the Equal Employment Opportunity Commission within sixty (60) days of the date of entry of this Consent Decree by the Court.

35.     Defendant will post the Hiring and Promotion Policy on its website, in an area accessible to employees and applicants.

36.     The Hiring and Promotion Policy shall state that Defendant is an "Equal Opportunity Employer" and that the Defendant "values a diverse workforce" or words of similar meaning. Defendant will review existing materials regarding recruitment, hiring and training to eliminate, if applicable, any explicit and/or implicit expressions of race-based applicant or employee preferences.

37.     To the extent that a vacancy cannot be temporarily filled by a supervisor, Defendant may fill the vacant position on an interim basis not to exceed eight weeks. Interim employment shall not be considered in the hiring or promotion decision.

38.     Defendant shall post all vacant positions governed by its Hiring and Promotion Policy in the following locations: at the time clocks, in the driver check-in room, in the break rooms and via company-wide email.

39.     All employees shall be notified of all vacancies by posting at least one week prior to the application deadline.

40.     Defendant may post positions internally at the time clocks, in the driver check-in room, and break rooms first and exclusively without violating this Decree.

41.     Defendant shall ensure that each position advertised on third-party websites are also advertised on Defendant's website and dispersed to all of Defendant's employees. No provision of this Hiring and Promotion Policy shall be construed to excuse Defendant from gathering required EEO data from job applicants.  Defendant will continue to request that applicants provide race and gender information to the extent it must do so to comply with federal law.

42.     The Hiring and Promotion Policy will also reference Defendant's equal employment opportunity policy.

## IX.     ROUTE SALESMAN CONSIDERATION

43.     Within sixty (60) days of entry of the Consent Decree, Defendant will contact each identified Class Member via letter to inquire whether they wish to be considered for employment or promotion for Route Salesman positions and, if so, invite them to submit an expression of interest identifying all geographic areas of interest by return letter or email within 14 days. Class Members who express an interest in the Route Salesman position are hereafter referred to as "Preferred Applicants." For the duration of the Decree, when Defendant fills any Route Salesman position, it shall give Preferred Applicants who have expressed interest in that geographical route first consideration, to be defined as (i) 48 hours advanced notification via email of the opening and (ii) upon the Preferred Applicant making an application in compliance with Defendant's Hiring and Promotion policy, the Preferred Applicant will automatically advance to interview with the decisionmakers. Defendant shall not be required to hire an unqualified claimant. Defendant retains the right to select the most qualified applicant for the opening.

44.     For the duration of this Decree, the Title VII Coordinator will review all employment and/or promotion decisions for Route Salesman positions and certify that such decisions are non-

discriminatory and in compliance with Title VII as part of his/her duties identified in Paragraph 25.

## X.    RECORDKEEPING AND REPORTING

45.    Defendant shall maintain all employment records as required by Section 709(c) of Title VII, 42 U.S.C. Section 2000e-8(c), and 29 C.F.R. § 1602.14.   In order to demonstrate its compliance with the provisions of this Decree, Defendant will maintain for the duration of this Decree, the following: 1) all applications for Route Salesman positions; 2) all notes of interviews with an applicant, notes of other contact with an applicant, and notes of attempts to contact an applicant; 3) all applicant self-identification forms; 4) the date a Preferred Applicant was offered employment, the position offered, and whether the offer was accepted or rejected; and 5) documents related to each complaint of race discrimination made by an applicant for employment. Such documents shall include the date the complaint was made, the name of the complainant, the allegations of the complaint, and what actions Defendant took, if any, to resolve the matter.  At any time, the Commission may request the opportunity to review all or a specified portion of these records.

46.    Defendant shall maintain records of any complaints or reports of discrimination or retaliation by any employee or applicant. These records shall include the following:

a.    the name of the employee or applicant making the complaint or report;

b.    the date of the report or complaint;

c.    a detailed description of the allegations made (including a copy of the complaint or report, if made in written form);

d.    the names of any witnesses;

e.    the name and job title of the person(s) allegedly participating in the discriminatory or retaliatory conduct; and

    f.      what actions, if any, Defendant took to resolve the complaint or report.

47.    Defendant shall provide a report to the Commission semi-annually during the term of this Decree.  Each semi-annual report shall contain:

    a.      a summary of all complaints of discrimination recorded by Defendant pursuant to Paragraph 46 above or certification that there were no such complaints during the reporting period;

    b.      a record of attendance of the training required by Paragraphs 50 through 52 below;

    c.      a certification by Defendant that the Notice Posting required by this Decree remained posted during the time period preceding the report; and

    d.      a list of all individuals who applied for a Route Salesman position with Defendant, during the preceding twelve months, including name, race, address and position for which such individual applied, and the result of their application.

48.    The first semi-annual report shall be due six months after the entry of this Decree. Subsequent reports shall be due every six months thereafter during the term of this Decree, except that the final report shall cover a five-month period and shall be submitted thirty (30) days before the expiration of the Decree.

## XI.   <u>TRAINING</u>

49.    Defendant shall provide semiannual training on employment discrimination and retaliation to all of its employees. The initial training will be scheduled and conducted within sixty (60) days after the entry of this Decree. The training program will include the following information: (a) a detailed agenda: (b) curriculum vitae for the individuals who will conduct and/or develop the training; and (c) training materials.

50.     Defendant shall advise all staff in writing that the semiannual training program is mandatory for all employees. The semiannual training program shall last one hour and shall include the following:

     a.     Instruction on the requirements of Title VII of the Civil Rights Act of 1964, as amended, including race discrimination in hiring and promotion;

     b.     An in-depth discussion of discrimination, including what constitutes race discrimination under Title VII.

     c.     A discussion of retaliation, including what constitutes retaliation under Title VII;

     d.     Instruction on any policies related to this Consent Decree, including but not limited to Defendant's Anti-Discrimination Policy and Equal Employment Opportunity Policy;

     e.     A discussion of Defendant's Policy prohibiting discrimination and retaliation, including procedures and responsibilities for accepting, reporting, investigating and remedying discrimination and retaliation, and for management employees investigating and resolving complaints of discrimination.

     f.     The training session does not have to include reference to this Consent Decree.

51.     In addition to the semiannual training described above, all Alabama-based supervisory and management-level employees, and all Managers who supervise those supervisors and Managers, shall, within ninety (90) days of the entry of this Consent Decree, attend a one-time two (2) hour live training. "Live" training may be conducted online (e.g., via Zoom). Annually thereafter during the term of this Consent Decree, such supervisor and management employees will attend an up-dated two-hour training. With regards to management and supervisor employees, the training shall instruct such individuals on best practices for responding to discrimination and retaliation complaints and will describe how effective investigation of such

complaints is conducted and documented. The training shall also address the Company's policies pertaining to confidentiality and anti-retaliation relative to employees who report or participate in an investigation or oppose discrimination and retaliation. The live training shall conclude with a minimum of fifteen (15) minutes for questions and answers.

52.     Defendant shall ensure that its CEO provides a statement, either pre-recorded or via video-conferencing, at the training sessions to inform participants of Defendant's Anti-Discrimination Policy, and that Defendant will not tolerate any discrimination in the workplace, and the consequences for discriminating in the workplace.

53.     Defendant will retain an outside human resources consultant or attorney who has specialized knowledge of employment discrimination and who has experience in labor and employment law to provide the training and to fulfill the training requirement in Paragraphs 50 through 52 above.

54.     Defendant agrees to provide to the Commission a signed roster of the list of attendees for all training sessions with each report as set forth in Paragraphs 50 through 52 above.

55.     In addition, Defendant will provide the training described in Paragraphs 50 through 52 to all newly hired employees within ninety (90) days of the date of hire. Such training of newly hired employees may be live or by videotape.

## XII.     SUPERVISOR ACCOUNTABILITY

56.     Defendant shall promote supervisor accountability by the following conduct:

    a.      Providing anti-discrimination training to all of its supervisory and managerial personnel as set forth in Paragraphs 51 and 52 above;

    b.      Disciplining, up to and including discharge, any supervisor or manager who violates Defendants' policies against discrimination.

## XIII.   NOTICE POSTING

57.     Defendant shall post the Notice attached as Exhibit A in all of its facilities and on its website within ten (10) business days of entry of this Decree.

58.     Defendant shall post Exhibit A in conspicuous places upon its premises where notices to employees are customarily posted and keep Exhibit A posted for the duration of this Decree.

59.     Defendant shall also keep posted in conspicuous places the notice poster required by Title VII, 42 U.S.C. § 2000e-10.

## XIV. <u>MONITORING</u>

60.     The Commission shall have the right to monitor and review compliance with this Decree. Defendant shall cooperate with the Commission in any review function as it relates to this Decree. Specifically, the Commission shall have the right to review any and all training and documents that this Decree requires Defendant to create or maintain, upon reasonable notice to Defendant's counsel.

## XV.     <u>DISPUTE RESOLUTION</u>

61.     In the event that either party to this Decree believes that the other party has failed to comply with any provision(s) of the Decree, the complaining party shall notify the other party of the alleged non-compliance and shall afford the alleged non-complying party 10 business days to remedy the non-compliance or to satisfy the complaining party that the alleged non-complying party has complied. If the alleged non-complying party has not remedied the alleged non-compliance within 10 business days, the complaining party may apply to the Court for appropriate relief. The term of the Decree shall automatically be extended during the pendency of any dispute under this Paragraph.

## XVI.   <u>MISCELLANEOUS PROVISIONS</u>

62.     The terms of this Decree are and shall be binding on the present and future directors, officers, managers, agents, successors and assigns of Defendant.  At least twenty-one (21) days

prior to any sale or other transfer of Defendant's business or sale or other transfer of all or a substantial portion of Defendant's assets, Defendant shall provide a copy of this Decree to any potential purchaser, potential transferee, or other potential successor, and shall contemporaneously notify the Commission of such sale or transfer.

63.    Each of the parties shall bear its own costs, attorney fees, and expenses in this lawsuit and prosecution and defense of the Charge preceding it.

64.    This Decree shall not be construed as placing any limit on remedies available to the Court in the event that any individual is found to be in contempt for a violation of this Decree.

65.    If the Court finds any provision of this Decree unlawful, the Court will sever only such provision, and the remainder of the Decree will remain in full force and effect.

66.    When this Decree requires a certification by Defendant of any facts, such certification will be made under oath or penalty of perjury by an officer or management employee of Defendant.

67.    When this Decree requires Defendant to submit reports, certifications, notices, or other materials to the Commission, submissions shall be made to the attention of the Regional Attorney, Equal Employment Opportunity Commission, 1130 22nd Street South, Suite 2000, Birmingham, Alabama 35205.

## XVII. **SIGNATURES**

68.    The parties agree to the entry of this Decree subject to final approval by the Court.

BY CONSENT:

Gwendolyn Young Reams
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Acting General Counsel
131 M. Street NE
Washington, D.C. 20507

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

By: _____

Marsha Rucker
Regional Attorney

Date: _____
6/1/21

BIRMINGHAM BEVERAGE COMPANY, INC.
d/b/a AlaBev

By: _____

Birmingham Beverage
Representative

Date: _____
5/28/21

**DONE** and **ORDERED** this June 4, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**NOTICE**

The following notice is being posted pursuant to the terms of a Consent Decree reached between the Parties in EEOC v. Birmingham Beverage Company, Inc. d/b/a AlaBev filed in the United States District Court for the Northern District of Alabama, Civil Action No. 2:17-CV-0651-MHH.

Management of Birmingham Beverage wishes to emphasize the company's fundamental policy of providing equal employment opportunity in all of its operation and in all areas of employment practices. Birmingham Beverage seeks to ensure that there shall be no discrimination against any employee or applicant for employment on the grounds of race, color, religion, sex, pregnancy, national origin, age or disability. This policy extends to insurance benefits and all other terms, conditions, and privileges of employment.

Pursuant to Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate based upon the race of an applicant or employee.  Further, it is unlawful for any employer to retaliate against an employee because he or she has requested reasonable accommodation for disability, opposed discriminatory employment practices, or because he or she has filed a charge of discrimination with any municipal, state, or federal equal employment opportunity agency, or because he or she has participated in an investigation of a charge of discrimination.

Birmingham Beverage respects the right of its employees and applicants for employment to work in an environment free from discrimination.  Accordingly, Birmingham Beverage reaffirms its commitment to complying with Title VII, in that it is our policy to prohibit all discrimination based on gender, race and national origin.

**You may report your concerns of discrimination, harassment or unequal treatment to Birmingham Beverage's twenty-four hour employee hotline at [insert 1800 number here].**

**Any employee who believes that he/she has suffered discrimination on the basis of age, race, color, religion, sex, pregnancy, national origin, or disability, has the right to contact the EEOC directly at 1-800-669-4000.**

In compliance with federal law, no official at Birmingham Beverage will retaliate against an employee who makes an internal complaint of discrimination or who contacts the EEOC.

This Notice shall remain posted for the term of 3 years.


Birmingham Beverage Company, Inc.



By:_____                    _____

                                                                        Date

**<u>EXHIBIT B</u>**
**CLASS MEMBER RELEASE**

In consideration for $_____ paid to me by Defendant Birmingham Beverage Company, Inc. d/b/a Alabev, in connection with the resolution of *EEOC v. Birmingham Beverage Company, Inc., d/b/a Alabev*, Civil Action No. 2:17-CV-01651-MHH, I waive my right to recover for any claims of race discrimination arising under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, that I had against Defendant Birmingham Beverage prior to the date of this release and that were included or could have been included in the Title VII discrimination claims alleged in EEOC's complaint in *EEOC v Birmingham Beverage Company, Inc. d/b/a Alabev*, Civil Action No. 2:17-CV-01651-MHH filed in the United States District Court for the Northern District of Alabama.

Date:_____     Signature:_____

Print Name: _____